Edward BROWN, Plaintiff,

v.

**FAIRLEIGH DICKINSON UNIVERSITY, et al., Defendants.**

Civ. No. 81–735.

United States District Court,
D. New Jersey.

March 15, 1983.

Arthur N. Martin, Newark, N.J., Michael Sussman, NAACP Special Contribution Fund, Brooklyn Hts., N.Y., for plaintiff.

Dennis M. Cavanaugh, Maria L. Vecchiotti, of Lum, Biunno & Tompkins, Newark, N.J., for defendants.

## OPINION

LACEY, District Judge.

On this application by various defendants for attorneys' fees and costs, a review of the history of these proceedings is appropriate, to be read with this court's Findings of Fact and Conclusions of Law filed herein on September 24, 1982, in connection with the court's determination of plaintiff's Title VII claim against the plaintiff and in favor of the then remaining defendant, Fairleigh Dickinson University (FDU).

## I. HISTORY OF PROCEEDINGS

In this civil rights action, Edward H. Brown, a black adult male from New Jersey, sued under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, the thirteenth amendment of the United States Constitution, and 42 U.S.C. §§ 1981 and 1985(3), in order "to redress the deprivation of plaintiff's rights to equal employment practices by the defendants . . . ." Second Amended Complaint at 1. He also charged defendants with slander, libel, and violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 *et seq.* Originally named as defendants were FDU, located in Rutherford, New Jersey, twenty-nine individual employees of FDU, and a private investigating agency.

Plaintiff was appointed Director of Purchasing at FDU in July 1969. He received yearly contract renewals for the years 1970–71, 1971–72, 1972–73, 1973–74, and 1975–76. On October 9, 1975, FDU's Vice President for Financial Affairs, Lowell W. Herron, terminated plaintiff's employment. The termination letter stated that plaintiff was being discharged because his "recent accusations regarding the integrity of certain administrators of the University" had produced "a serious disruptive effect within the administration," and because of personal transactions with vendors who did a substantial amount of business with FDU. Letter from Lowell W. Herron to Edward H. Brown, October 9, 1975. On February 11, 1976, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against FDU, Dr. Herron, Milton Cooper, J. Osborn Fuller, Jerome Pollack, and Joseph Green. On December 17, 1980, the EEOC issued a Right to Sue letter. Plaintiff commenced this action by filing a verified complaint on March 17, 1981. At that time, plaintiff's attorney was Arthur N. Martin, Jr.

The original complaint alleged that defendants had discriminated against plaintiff in the terms, conditions, and privileges of employment because of his race, color and national origin. Although the complaint was diffuse and repetitive, the following specifics emerged. Plaintiff asserted that he had been "an active and aggressive advocate of equality of opportunity for minorities in all facets of the University's operations," Complaint, ¶ 10, and a vocal oppo-

nent of FDU's alleged racially discriminatory practices in hiring, purchasing, and treatment of black students. He stated that he had filed a complaint with the New Jersey Division of Civil Rights in 1973, alleging that FDU and four of its employees, Lowell Herron, J. Osborn Fuller, Harry Bingham, and Milton Cooper, had discriminated against him because of his race; in July 1975 he amended the complaint to include charges of reprisal. *Id.*, ¶ 10, ¶ 16. Plaintiff alleged that the defendants had discharged him in retaliation for his filing of the complaint with the Division of Civil Rights, and also for his activist role at the University. He also alleged that, while he was employed, defendants had harassed him by excluding him from planning and decisionmaking; assigning many of his job functions to other employees; refusing to provide support when he required it; denying him equal opportunity to bid on job vacancies within the University; placing him in a situation where discharge was likely; subjecting him to a "vicious smear campaign," *id.*, ¶ 10; and hiring a private investigating agency to question his acquaintances and to keep him under surveillance. By and large, the complaint did not detail the roles of individual defendants, but spoke instead of "defendant, Fairleigh Dickinson University" or "defendants, Fairleigh Dickinson University, et als."

In April 1981 plaintiff improperly and unsuccessfully attempted service of some of the many persons named in the complaint. At a conference on June 15, 1981, the court instructed plaintiff to re-serve the summons and complaint. When nothing had happened by June 29, 1981, the court held another conference and ordered plaintiff to serve an amended complaint "which will specifically detail the alleged discriminatory acts of each of the defendants in lieu of plaintiff stating the allegations in terms of what 'defendant, Fairleigh Dickinson University, et als.' allegedly did." Order of June 29, 1981. Plaintiff was ordered to file the amended complaint no later than July 7, 1981. The court also set a trial date of December 7, 1981; however, as will hereinafter appear, this date was not met and several extensions were necessary by reason of plaintiff's violation of pretrial orders and procedures prescribed by the court.

Plaintiff did not file his amended complaint until July 10, 1981. At a status conference on July 21, 1981, the court found that the amended complaint still lacked the ordered specificity, and directed plaintiff to clarify its ambiguities. On July 24, 1981, plaintiff filed his second amended complaint. The law firm of Lum, Biunno and Tompkins accepted service on behalf of FDU, Martin C. Conant, Jerome M. Pollack, and Ronald J. Von Essen, and filed an answer on behalf of those defendants on August 7, 1981. In mid-September 1981 plaintiff began to re-serve some of the other defendants at their business addresses. On November 23, 1981, Lum, Biunno and Tompkins filed an answer on behalf of James V. Griffo.

Meantime, on September 14, 1981, the law firm of Brown, Brown and Furst entered an appearance as attorneys (along with Martin) for plaintiff. Discovery then ensued from October 1981 through January 1982. Plaintiff worked zealously and actively on the case from its outset. As his brief in opposition to the fee application states,

> Mr. Brown arranged his voluminous files for Ms. Singer's use and fully prepared her for the Cooper, Herron and Von Essen depositions. He spent more than five hundred hours, night after night, working with Ms. Singer on the development of the case and essentially lived in the law offices of Brown, Brown & Furst from October to January.

Plaintiff's Brief in Opposition to Defendant's Application for Attorneys' Fees at 4–5.

On October 27, 1981, plaintiff voluntarily dismissed the action as to twelve defendants, some of whom had still not been served. The complaint was dismissed as to Harry S. Bingham, Clifford Burnham, Milton H. Cooper, A. Steven Donofrio, Stephen Edmundson, Saul K. Fenster, Joseph Green, C. William Hall, Lowell W. Herron, Ken-

neth Hesselbirg, Malcolm L. Sturchio, and Robert Wiley. The dismissal as to Herron is of interest because it is undisputed that it was he who decided to, and did, fire Brown. According to defendants' counsel, at the time of these dismissals and during the course of discovery Ms. Singer made "numerous representations" that consents to dismissals would also be shortly forthcoming for defendants Pollack and Griffo. Affidavit of Dennis M. Cavanaugh, April 26, 1982 (Cav.Aff. III), ¶ 13. While plaintiff's counsel, Mr. Martin, later stated that Ms. Singer had never told him that she intended to dismiss Pollack and Griffo, see Transcript of Proceedings, May 4, 1982, at 12–13, Singer herself was never called upon to refute Cavanaugh's contention. Moreover, as late as March 22, 1982, plaintiff's then co-counsel, Michael Sussman, was under the impression that Pollack and Griffo had already been voluntarily dismissed from the case. Plaintiff's Brief in Opposition to Defendant's Application for Attorneys' Fees at 8. Nonetheless, voluntary dismissals as to Pollack and Griffo were never offered.

On February 5, 1982, the Brown firm applied to be relieved as counsel for plaintiff, "on the grounds that the relationship between plaintiff and [counsel] had deteriorated to the extent that it is inappropriate to continue in his representation" and because plaintiff had breached both an initial and a revised retainer agreement. Notice of Motion, January 18, 1982; see Affidavit of Raymond M. Brown, January 21, 1982, ¶ 3–¶ 4. Plaintiff did not oppose the motion; neither he nor Mr. Martin appeared at the hearing.[1] On February 11, 1982, the court granted the motion, thus making Mr. Martin sole counsel of record once again.

A pre-trial conference was held on February 5, 1982. The court ordered all discovery to be completed by March 9, 1982; trial was rescheduled for April 5, 1982. The order also set forth dates by which proposed jury instructions (for the jury issues), suggested findings of fact and conclusions of law (with critiques of the other side's suggested findings) (for the non-jury issues), and trial memoranda were due.

On March 10, 1982, defendants FDU, Von Essen, Conant, Pollack, and Griffo moved for dismissal of portions of the second amended complaint. After a hearing the court granted dismissal of "all claims alleging defamation and/or violations of N.J. S.A. 10:5 et seq.," but denied dismissal of claims under 42 U.S.C. §§ 1981 and 1985. Order of March 10, 1982. Since plaintiff had failed to provide answers to supplemental interrogatories, originally due by March 9, 1982, the order also extended plaintiff's time to answer the interrogatories until March 24, 1982.

On March 30, 1982, plaintiff applied for an adjournment of the trial date, still not having complied with the court's prior order. Nonetheless, to allow plaintiff more time, he was given until April 16, 1982, to comply, and the trial was postponed from April 5 to April 27, 1982. Later, as will be seen, the trial was postponed once again, until May 3, 1982 (after jury selection on April 27).

Two weeks before trial was scheduled to begin, on April 19, 1982, plaintiff moved on short notice for the admission pro hac vice of Michael H. Sussman, Assistant General

---

1. In his brief, plaintiff states that he did not appear to oppose the motion because Ms. Singer had informed him that the court was unlikely to grant the motion at such a late date. No affidavit from Singer, or anyone else, has been offered in support of this averment. He also states that Brown, Brown and Furst never explained their reasons for moving to withdraw, and says that he paid the firm $15,000 between November 1981 and January 1982, notwithstanding the firm's initial representation that it would handle the case pro bono. Plaintiff's Brief in Opposition to Defendant's Application for Attorneys' Fees at 5. None of these state-ments have been presented to the court in the form of a sworn affidavit. Martin had continued in the case. After the Brown firm was permitted to withdraw, no motion was made by the plaintiff for reconsideration. The court later learned that Brown, long active in the NAACP, had also had the assistance of that organization while represented by Martin and the Brown firm. See pp. 396–397, infra. The plaintiff has never denied that his relationship with the well known and respected Brown firm had "deteriorated." He was later to assert that his relationship with Martin likewise had deteriorated.

Counsel of the National Association for the Advancement of Colored People (NAACP) Special Contribution Fund and a member of the Massachusetts bar. Defendants opposed the motion. The court held a telephone conference with counsel on April 19. In support of his motion, Mr. Martin stated, for the first time, that he had not participated actively in the case after the Brown firm had entered their appearance; that Mr. Sussman had assisted the Brown firm; and that, before he, Martin, had renewed his active representation of the plaintiff, the NAACP Special Contribution Fund had assured him that Mr. Sussman would assist him. *See* Affidavit of Arthur N. Martin, Jr., April 20, 1982 (Martin Aff. I), ¶ 3–¶ 6.[2]

After hearing the arguments of counsel, the court denied the motion. The court stated that, since Mr. Martin had already put a considerable amount of time into the case and was thoroughly familiar with it, he should continue to try the case, and that Mr. Sussman could be present to aid him in any way and as much as was necessary. The court also expressed a fear that Mr. Martin was attempting to ease himself out of the case on the eve of trial, thus causing further postponement of the trial.

On the following day, April 20, 1982, plaintiff moved for reconsideration of the court's decision. Plaintiff and Mr. Martin submitted affidavits in support of the motion. Plaintiff stated that Mr. Sussman had been involved in the case since October 1981, meeting with Ms. Singer (of Brown, Brown and Furst) "on several occasions" and serving "in a consultative role, advising Ms. Singer of discovery strategy and doing back-up writing and research as necessary." Affidavit of Edward H. Brown, April 20, 1982, ¶ 5–¶ 6. Mr. Sussman also met with plaintiff and discussed the case with him. *Id.,* ¶ 6. In February 1982, after the Brown firm withdrew, plaintiff asked Mr. Sussman to serve as lead counsel but, because of other trial commitments, he was unable to do so. *Id.,* ¶ 7. Plaintiff stated that Mr. Sussman was his first choice as counsel, and

asserted that his case would be prejudiced if Mr. Sussman were not allowed to represent him. *Id.,* ¶ 7, ¶ 9, ¶ 11. He also stated that the admission of Mr. Sussman would not delay trial. *Id.,* ¶ 10. Mr. Martin's affidavit did not address the question of delay.

The court granted the motion for reconsideration and held a hearing on April 20, 1982. Mr. Martin repeated his arguments of the previous day and stated that the admission of Mr. Sussman would not delay trial, an obvious reference to Mr. Sussman's familiarity with the case gained while working on it with the Brown firm. Transcript of Proceedings, April 20, 1982, at 4. Upon reconsideration, the court adhered to its earlier ruling. The court again stated that Mr. Sussman could attend the trial and could do anything he wished to help Mr. Martin. *Id.* at 6. The court denied the motion, however, because:

> I want to be absolutely sure that nothing occurs, that there is absolutely no basis for any applications that in any way will hinder this matter going to trial. And while I can accept now counsel's representations made in good faith that nothing would be drawn from [Mr. Sussman's] coming in on pro hac vice grounds to impair what I've just said will be our goal and has been our goal, to put this case on trial, nonetheless the best way to assure that is to deny [him] pro hac vice status. But, on the other hand, I do hope that [he] will continue to remain in the matter.

*Id.*

At the same hearing, defendants cross-moved for costs and attorneys' fees due to Mr. Martin's failure to appear for a deposition of Senator Fairleigh S. Dickinson, Jr., scheduled for 9 a.m. that morning, April 20. Over defendants' objections, the court had allowed plaintiff to subpoena and depose Senator Dickinson, who had originally been named as a defendant in the case but had never been served. At 9:05 on the morning of April 20, defendants' counsel received a telephone message saying that the deposi-

---

**2.** Although Mr. Martin's affidavit was not filed with the court until April 20, the facts contained in it were presented to the court during the telephone conference on April 19.

tion was cancelled. Approximately half an hour later, Mr. Martin telephoned Dennis Cavanaugh, counsel for the defendants, and stated that he was not prepared for the deposition because he had hoped Mr. Sussman would take it. Transcript of Proceedings, April 20, 1982, at 7. Mr. Cavanaugh objected to providing Senator Dickinson for deposition again. The court denied the application for costs and attorneys' fees and allowed plaintiff a new date for deposition.

On the next day, April 21, 1982, notwithstanding this court's having stated Mr. Sussman could work with and assist Mr. Martin, plaintiff applied to the Court of Appeals of the Third Circuit for what amounted to a reversal of the order denying Mr. Sussman *pro hac vice* status. Circuit Judge John Gibbons denied the application. On April 26, 1982, a Third Circuit panel also denied the application.

Also on April 21, 1982, defendants FDU, Pollack, Conant, Von Essen, and Griffo moved for dismissal of the second amended complaint as a sanction for plaintiff's continued failure to comply with the court's discovery orders. In the alternative, defendants sought other sanctions. Although plaintiff had failed to comply with the court's orders of July 21, 1981, February 5, 1982, and March 30, 1982, regarding discovery, and defendants asserted that plaintiff's failure had prejudiced their preparation for trial, Affidavit of Dennis M. Cavanaugh, April 19, 1982 (Cav.Aff. II), ¶ 23, the court denied the motion to dismiss. A $100 fine was imposed on Mr. Martin.

The court held trial preparation conferences on April 21, 23, and 27, 1982. On April 27, at an off-the-record conference in chambers, and after he had failed to reverse this court's order regarding Mr. Sussman, Mr. Martin told the court for the first time that he felt emotionally unable to go forward due to a personal problem, and requested a continuance. Defendants objected to any postponement, since counsel had already scheduled numerous witnesses for trial. The court listened sympathetically to Mr. Martin's explanation of his problems, but thought it advisable to keep to the

scheduled trial date, and so denied the continuance. The court determined that a jury should be picked, but that trial would not start before May 3. A jury was chosen on April 27, but was not sworn.

Also on April 27, defendants FDU, Pollack, Conant, Von Essen, and Griffo filed a notice of motion for dismissal of the second amended complaint against all persons named as defendants who had not been served, and for dismissal of portions of the second amended complaint against themselves. The motion was returnable April 29. When Mr. Martin told the court that his responding papers would not be ready by that date, the court put the matter over until May 4, to give plaintiff time to respond. Transcript of Proceedings, May 4, 1982, at 5.

On May 3, 1982, plaintiff filed a notice of motion for leave to file a substitution of counsel or, in the alternative, for Mr. Martin to be relieved as counsel. At that point, trial was now expected to begin on May 6, 1982. *See* Transcript of Proceedings, May 4, 1982, at 1. This time, by way of affidavit in support of the motion, Mr. Martin stated that he was unprepared to proceed to trial; Mr. Martin complained of the court's refusal to admit Mr. Sussman *pro hac vice,* and stressed Mr. Sussman's qualifications and his familiarity with the case. Affidavit of Arthur N. Martin, Jr., May 3, 1982 (Martin Aff. II), ¶ 5–¶ 9. The impression sought to be created was that Mr. Sussman was prepared but that Mr. Martin was not.

The court held a hearing on plaintiff's motion on May 4, 1982. After recapitulating the history of the case, the court denied the motion, perceiving it as just one more tactic of delay. The court pointed out the irony that plaintiff, through discovery, had helped to generate the "voluminous documentary evidence" with which Mr. Martin now claimed he was unprepared to cope (Martin Aff. II, ¶ 5), and stated that defendants, at great expense to them, had been placed in an embarrassing position by plaintiff's failure to respond to discovery and by the repeated efforts at delay. Transcript of Proceedings, May 4, 1982, at 9–10.

Mr. Martin was instructed to remain as counsel so that trial could proceed.

The court then considered defendants' motions for dismissal, to which plaintiff still had not responded. Defendants sought dismissal of the complaint against eight persons named in the complaint who had not been served (Fairleigh S. Dickinson, Jr., J. Osborn Fuller, Albert Geller, William McGarry, Samuel Bieber, Carol Johnston, James Brennan, and Joseph Carter). They also sought dismissal of the complaint against the individual defendants Pollack, Conant, Von Essen and Griffo, on the grounds that discovery had produced nothing which could set forth a cause of action against any of them. To prove this assertion, defendants' counsel submitted an affidavit to which he attached portions of plaintiff's deposition testimony and answers to interrogatories. Mr. Cavanaugh asserted, for example, that the only charge against defendant Pollack, the President of FDU, was that he had helped create a climate in which the University's middle management could come forward to discuss problems they were having with the University's Purchasing Department. Cav.Aff. III, ¶ 29. Mr. Cavanaugh stated that the charges against defendant Griffo were based entirely on two unfounded hearsay allegations, *id.*, ¶ 33; that defendant Conant, Secretary of the Board of Trustees of FDU, was accused only of playing a tape for an investigator from the Union County Prosecutor's office and of calling plaintiff "clever," *id.*, ¶ 31; and that defendant Von Essen, the University Internal Auditor, was accused only of taking actions which were within the scope of his employment. *Id.*, ¶ 35. Mr. Cavanaugh also repeated that Ms. Singer of the Brown firm had stated on numerous occasions that she intended to file voluntary dismissals of the complaint against Von Essen and Griffo, *id.*, ¶ 13, but had never done so.

Mr. Martin filed no affidavit in response to Mr. Cavanaugh's affidavit. He stated that he was aware of defendants' argument that there was no case against them, but (notwithstanding his earlier claim of being unable to go forward) asserted that he would be able to prove at trial that they denied plaintiff his rights. Transcript of Proceedings, May 4, 1982, at 13–14. He also said that he was unaware that Singer ever intended to dismiss as to Griffo and Von Essen. *Id.* at 12–13.

The court first stated that defendants' motion would be denied, Transcript of Proceedings, May 4, 1982, at 16, but then decided to continue the hearing until May 7 in order to give Mr. Martin a chance to prepare papers in response. *Id.* at 17. The court warned Mr. Martin that, if the claims proved frivolous at trial, the court would consider an application for attorneys' fees on behalf of the defendants. *Id.* at 15. *See* pp. 21–22, *infra.* The court stated that trial would commence on May 7, 1982.

The next step by the plaintiff in what had now become a tragi-comic series of events was to file, on May 4, 1982, a motion for recusal and disqualification of this judge. Mr. Martin had not mentioned he planned such a motion when he was before this court. The motion was returnable May 7, the date trial was scheduled to begin. On May 5, 1982, the court notified counsel by telephone and telegram that, in the event the recusal motion was denied, trial would go forward on May 7 as scheduled. Transcript of Proceedings, May 7, 1982, at 10–11. The message further stated, " 'Both counsel should be prepared to open to the jury and the plaintiff should be prepared to adduce testimony on this case.' " *Id.* at 11.

At the hearing on May 7, plaintiff argued that certain statements of the trial judge indicated a predisposition against plaintiff which made recusal necessary. He pointed to the trial judge's statement, "Life goes on," made to Mr. Martin during the off-the-record conference in chambers on April 27, 1982, upon hearing that there had been a problem in the Martins' adopting a baby. The court found that plaintiff mischaracterized that statement. Viewed in context, the statement did not indicate any prejudgment of the plaintiff; rather it was an attempt to encourage and hearten Mr. Martin:

I listened with sympathy to his personal problem and told him that I had learned a long time ago that work was the best antidote for personal problems; and that he could not withdraw from his practice, because he had to make a living.

Transcript of Proceedings, May 7, 1982, at 8. Plaintiff also ascribed to the court a statement that " 'Brown was trying to destroy the university, bring it to its knees.' " *Id.* The court found that Mr. Martin misrepresented this statement. *Id.* Plaintiff alleged that the court showed predisposition when it " 'raise[d] the possibility' " that " 'substantial legal fees' " could be awarded against plaintiff if his claims were frivolous. *Id.* The court found that the possibility of such an award was a legitimate one, which could not be disregarded. *Id.* at 8–9. Plaintiff also referred to a statement the court made in response to Mr. Cavanaugh's charge, on defendants' motion to dismiss, that Mr. Martin had not responded to his moving papers. When the statement was made, it appeared to the court that Mr. Martin's failure to respond was consistent with his claim that he needed assistance, and the statement was made in that light. *Id.* at 9. Although the court had made numerous rulings in the case, plaintiff did not suggest that any of them reflected a bias. *Id.* at 10.

The court denied the motion, finding it without basis in law or fact. Transcript of Proceedings, May 7, 1982, at 9. In addition, the court pointed to its thorough familiarity with the case and the imposition which transfer to another judge, on the eve of trial, would create. *Id.*

Mr. Martin had indicated that, if the motion was denied, he intended to appeal to the Third Circuit. The court offered to give plaintiff a stay so that he could appeal. Transcript of Proceedings, May 7, 1982, at 11–12. Circuit Judge John Gibbons denied plaintiff's motion, *id.* at 13.[3] Counsel then returned to this court and began to discuss the trial events.

At this juncture, after failure of the recusal effort, Mr. Martin stated that, as he returned from Judge Gibbons' chambers, plaintiff had handed him a note which read, " 'Mr. Martin, you are excused as my attorney as of this very moment. Edward H. Brown.' " Transcript of Proceedings, May 7, 1982, at 14. Both Mr. Martin and Mr. Cavanaugh stated that they were prepared to proceed to trial, which was scheduled to start that afternoon. *Id.* Mr. Cavanaugh objected to a continuance, since the court had already granted plaintiff a number of continuances, as well as extensions of time within which to file papers. He stated that he had fourteen or fifteen witnesses, including six from out of state, who had set aside time to attend the trial, and that he himself had adjourned other trials in order to be present. *Id.* at 15. The court had also juggled trials on its calendar in order to accommodate plaintiff. Mr. Cavanaugh also stated that defendants would be prejudiced by a continuance. *Id.* at 15–16.

The court then allowed plaintiff himself to speak. Plaintiff stated that he had relieved Mr. Martin because "Mr. Martin is not my choice of counsel to bring evidence before this court in support of my complaint." Transcript of Proceedings, May 7, 1982, at 16. Mr. Sussman was his first choice. Plaintiff also asserted that "Mr. Martin's knowledge of facts in this case and the relationships is lacking. He is unprepared and, by his own admission through affidavits, has stated that." Id. at 16–17. The plaintiff then asked permission to proceed *pro se* but, because he suffers from angina pectoris and narcolepsy, he required a continuance to obtain a medical examination first. If his doctors were to advise him not to act *pro se,* he said that he would then apply to the court for Mr. Sussman's admission as counsel. *Id.* at 17. Mr. Sussman, it is noted, was not present in court on May 7. *Id.* at 19.

The court considered plaintiff's application against "[t]he history of the repeated

---

**3.** On August 25, 1982, a Third Circuit panel granted defendants' motion to dismiss the plaintiff's appeal from the court's order denying the recusal motion. The panel dismissed for want of an appealable order.

attempts to put this trial off again and again." Transcript of Proceedings, May 7, 1982, at 18. The court noted its efforts to aid plaintiff: "At every stage where I could have gone one way or another I've taken the course that would give the plaintiff more time." *Id.* at 20. Mindful that the repeated postponements of discovery dates and trial had caused hardship and expense for the defendants, the court stated:

There comes a point when someone who starts a lawsuit has to be prepared to go on trial with it. There were numerous people named as defendants in this case. They've had this case hanging over their heads for a long time. And some of them, indeed, were not dismissed from the case until last week. There are others still remaining in the case, and I'm sure they're either anxious to get the cloud removed from their heads in a way that is not adverse to them, or, on the other hand, to get it removed from their heads on [*sic*] a way that is adverse to them. But at least to get a determination.

*Id.* at 18–19. The defendants were prepared for trial as they had been instructed to be, in the event the recusal motion was denied. Now, without prior warning, plaintiff had moved, on the very day of trial, with the previously selected jury in the courthouse, for a continuance so that he could proceed *pro se,* discharging Mr. Martin. The court found that plaintiff had "trivializ[ed]" the entire litigation process, *id.* at 19, and that the interests of justice would only be served by proceeding to trial. *Id.* at 20–21. The court pointed to its own familiarity with the case, the length of time the case had been pending, the fact that Mr. Martin had been in the case from the beginning, and the relative simplicity of the issues. *Id.* at 21–25. The court found no reason why the trial could not go forward as planned. *Id.* at 21. For all of these reasons, the court denied plaintiff's application for a continuance. The court also denied Mr. Martin's application to be relieved as counsel but stated that plaintiff could open to the jury if he desired. *Id.* at 23.

Plaintiff responded, "I cannot move forward, your Honor, under the circumstances." Transcript of Hearing, May 7, 1982, at 28. When asked whether he wanted Mr. Martin to open, plaintiff responded that he "ha[d] no objections to it, but he "d[id]n't want Mr. Martin to open to the jury." *Id.* at 29. The court reminded plaintiff that if he abandoned prosecution of the case and defendants moved for dismissal of the action with prejudice and for costs and attorneys' fees, the court would have to grant the request; the court advised plaintiff to consider the matter carefully before making his decision. *Id.* at 30–31. The court granted a recess so that plaintiff could confer with Mr. Martin. *Id.* at 32–33.

When the parties returned after recess, the court declared that trial would go forward and instructed Mr. Martin that he was still in the case and would open to the jury. Transcript of Proceedings, May 7, 1982, at 33–34. The jury was sworn, and counsel opened. Mr. Martin then informed the court that he was unprepared to call his first witness, even though he had received the court's telegram of May 5 advising him to be prepared to call witnesses on May 7. *Id.* at 37–39. Mr. Martin then applied, on behalf of plaintiff, to adjourn the trial until May 10. The court granted the application. *Id.* at 41. The court also granted defendants' motion to dismiss the eight persons named in the complaint who had not been served (Dickinson, Fuller, Geller, McGarry, Bieber, Johnston, Brennan, and Carter). The order of dismissal was filed on July 7, 1982.

On May 10, 1982, defendants moved for dismissal of the action with prejudice. The court mistakenly, it will now concede, denied the motion. Mr. Martin again applied to be relieved as counsel; this motion too was denied. Plaintiff then moved for Mr. Sussman's admission *pro hac vice.* Only after Mr. Sussman assured the court that he was completely familiar with the case and that his admission would cause no further delay, the court, reversing its earlier stand, granted the motion, while requiring Mr. Martin's presence daily thereafter. Trial proceeded with Mr. Sussman taking

over as trial attorney. Needless to say, it was with displeasure that the court heard Mr. Sussman state at the end of the day that he could not go forward because of other commitments, and required an adjournment of several weeks. Having permitted Mr. Sussman to come into the case *pro hac vice,* the court granted an adjournment until May 17, 1982.

Trial resumed on May 17 and continued until June 14, 1982. The claims under 42 U.S.C. §§ 1981 and 1985 were tried to the jury; the Title VII claims were tried to the judge. On May 17, 18, 19, 20 and 21, the defendants moved for dismissal of the case, on the basis of plaintiff's not having complied with this court's orders to provide pre-trial discovery materials. While the court noted that there was indeed a valid reason for defendants' complaints of having been misled and prejudiced by the plaintiff's many violations of this court's orders, the motions to dismiss were denied. On June 2, at the close of the plaintiff's case, defendants moved for a directed verdict on the jury issues and involuntary dismissal on the non-jury issues. The directed verdict motions were granted as to the individual defendants on the § 1981 and § 1985 claims, and the involuntary dismissal motions were granted on the Title VII claim against the individuals. A directed verdict in favor of FDU on the § 1985 claim was also entered. Trial then resumed as to FDU on the § 1981 (jury) and Title VII (non-jury) claims, and on June 9 and 10 FDU again moved unsuccessfully for a directed verdict and dismissal.

On June 14, 1982, on the § 1981 claim, the jury returned a verdict in favor of the defendant FDU. The court thereafter determined the Title VII claim in favor of FDU. *See* Findings of Fact and Conclusions of Law, filed September 24, 1982.

After the trial, defendants applied for costs and attorneys' fees. The court requested detailed briefs and affidavits on the

issue. On September 24, 1982, the court awarded the costs of the Title VII action to defendant FDU, but denied FDU's application for attorneys' fees after finding that the Title VII claim against FDU was not frivolous. Conclusions of Law, ¶ 5–¶ 6. Thereafter, in a letter opinion of October 20, 1982, the court stated that the § 1981 and Title VII claims against FDU were not frivolous; therefore, attorneys' fees would not be awarded "on those claims as to that defendant." The court then stated: "It is clear that other claims against individual defendants were frivolous and that attorneys' fees should be awarded on those claims." Letter Opinion, October 20, 1982. The court requested additional briefing distinguishing the services performed for individual defendants from the services performed for FDU.

## II. DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES

Individual defendants Pollack, Conant, Von Essen, and Griffo seek attorneys' fees, pursuant to 42 U.S.C. §§ 1988 and 2000e–5(k), for services performed with respect to all five of the claims asserted against them in the second amended complaint. Those claims alleged: violation of 42 U.S.C. § 1981; violation of 42 U.S.C. § 1985(3); violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.;* defamation; and violation of N.J.S.A. 10:5–1 *et seq.*

Attorneys' fees are also sought on behalf of three individual defendants who received voluntary dismissals on October 27, 1981 (Cooper, Fenster and Herron), and three individual defendants who received involuntary dismissals on July 7, 1982 (Dickinson, Fuller and McGarry).

■ Defendant FDU seeks attorneys' fees pursuant to 42 U.S.C. § 1988 for services performed with respect to three of the claims against it: the § 1985 claim, the defamation claim, and the claim under N.J.S.A. 10:5–1 *et seq.*[4]

---

4. The court notes that plaintiff filed a notice of appeal on October 12, 1982. The parties have not suggested, nor does the court find, that this court lacks jurisdiction over the motion for·

attorneys' fees while the appeal is pending. When the fee application is filed before the notice of appeal, the district court retains jurisdiction to award attorneys' fees while the ap-

A. *Standard Governing Awards of Attorneys' Fees Under 43 U.S.C. §§ 1988 and 2000e–5(k)*

In 1976 Congress amended 42 U.S.C. § 1988 to allow awards of attorneys' fees in civil rights actions. The statute now provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), contains similar language:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

Congress intended the standards for awards of attorneys' fees under the two statutes to be "generally the same," S.Rep. No. 94–1011, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912, and the Supreme Court has stated that the standards are identical. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam). *See also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 758 n. 5, 100 S.Ct. 2455, 2460 n. 5, 65 L.Ed.2d 488 (1980). Thus cases interpreting one statute may be used to interpret the other. *Sullivan v. Commonwealth of Pennsylvania Department of Labor & Industry,* 663 F.2d 443, 447 n. 5 (3d Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982).

 Defendants were clearly the "prevailing parties" on all claims in this action. However, prevailing plaintiffs and prevailing defendants are not treated identically when they apply for attorneys' fees under §§ 1988 and 2000e–5(k). Although the statutes do not distinguish between plaintiffs and defendants, the Supreme Court has set up a dual standard. A successful plaintiff in a civil rights action should ordinarily recover attorneys' fees, in order to effectuate the congressional policy of encouraging plaintiffs to act as private attorneys general and to enforce the Civil Rights Act. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). But a court should award attorneys' fees to a prevailing defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). *See also P. Mastrippolito & Sons, Inc. v. Joseph,* 692 F.2d 1384, 1386 (3d Cir.1982) (per curiam); *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978); *United States Steel Corp. v. United States,* 519 F.2d 359 (3d Cir.1975). Routinely awarding attorneys' fees to prevailing defendants would have an overly deterrent effect on civil rights plaintiffs and would discourage the vigorous private enforcement of the civil rights laws. *Christiansburg, supra,* 434 U.S. at 422, 98 S.Ct. at 700–01. But a defendant must be able to recover attorneys' fees when the action is groundless because, "while Congress wanted to clear the way for suits to be brought under the [Civil Rights] Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. at 700.

---

peal is pending. *Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789 (7th Cir.1983); *Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 584 (7th Cir.1981); *Terket v. Lund,* 623 F.2d 29, 32–34 (7th Cir.1980). Indeed, in this circuit, a judgment is not considered final for purposes of appeal until the district court has determined the extent of liability for any attorneys' fees to be awarded.

*deMouy v. Ingvoldstad,* 664 F.2d 21, 22 (3d Cir.1981); *Croker v. Boeing Co.,* 662 F.2d 975, 983–84 (3d Cir.1981). *Cf. White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (Federal Rules of Civil Procedure 59(e) does not apply to post-judgment applications for attorneys' fees under § 1988).

In this case, therefore, the court must first determine whether plaintiff's action was unreasonable, frivolous, meritless, or vexatious. As the Supreme Court pointed out in *Christiansburg*, a district court must resist the temptation to conclude that, because the plaintiff did not ultimately prevail, his action must have been meritless. 434 U.S. at 421–22, 98 S.Ct. at 700–01. On the other hand, the plaintiff's honest belief in the worth of his case does not make it meritorious. As the Supreme Court explained:

> [T]he term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and ... the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him.
>
> . . . .
>
> ... [N]eedless to say, if a plaintiff is found to have brought or continued [a meritless] claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

*Id.* at 421–22, 98 S.Ct. at 700–01 (emphasis in original) (footnote omitted). Assessment of the action's frivolousness and the award of attorneys' fees are clearly within the discretion of the district court. *Id.* at 416, 98 S.Ct. at 697–98; *Mastrippolito, supra,* 692 F.2d at 1387. The judge who presides at trial is particularly well qualified to make the findings necessary for an award of attorneys' fees and to perform the balancing of equities inherent in such an award. *Mastrippolito, supra,* 692 F.2d at 1387.

### B. Frivolousness of Plaintiff's Claims

This court has already ruled that plaintiff's claims against FDU under § 1981 and Title VII were not frivolous, and that "other claims" against individual defendants were frivolous. Letter Opinion, October 20, 1982. Defendants note this court has not yet decided whether plaintiff's § 1985 claim, his claim of defamation, and his claim based on N.J.S.A. 10:5–1 *et seq.* were

frivolously brought against FDU. Plaintiff reads the October 20 order as ruling that none of the claims against FDU was frivolous. He also asserts that the order does not decide that *all* claims against *all* individual defendants were frivolous and argues that some claims against some defendants were not. He states that no defamation claims were brought against any defendants, and that *no* attorneys' fees should be awarded for defense of such claims. Finally, he argues that attorneys' fees should not be awarded because plaintiff acted in good faith and on the advice of his attorney.

Clarification of the October 20 order is appropriate. After hearing all of the testimony in this case and considering all of the evidence in the record, this court concluded that the only action taken by FDU or any of its employees which provided prima facie support for any of plaintiff's claims was his discharge. The court found that Lowell W. Herron, FDU's Vice President for Financial Affairs, was solely responsible for plaintiff's discharge. *See* Findings of Fact, ¶ 13. Since Dr. Herron acted within the scope of his employment when he discharged plaintiff, his action bound FDU. Largely because of the significance of credibility determination in resolving the claims against FDU under § 1981 and Title VII, claims based thereon were not frivolous.

Dr. Herron was originally named as a defendant, but for some reason never stated was voluntarily dismissed by the plaintiff in October 1981. Defendants Pollack, Conant, Von Essen, and Griffo were the only individual defendants remaining at the time of trial. Plaintiff produced no evidence that any of these men participated in the decision to discharge him, or took any other action which discriminated against him. The baseless nature of the claims against these four individuals should have been apparent to plaintiff before trial. Defendants called it to his attention with their motion to dismiss, heard on May 4, 1982, which was supported by a detailed affidavit and extracts from depositions and interrogatories.

Indeed, the court, while reluctant to dismiss the claims against these defendants, warned plaintiff of the consequences of not adducing evidence of their culpability at trial. Nevertheless, plaintiff continued to press his claims against the individual defendants, with his attorney promising such evidence would be forthcoming at trial. *See* pp. 10–11, *supra.* Plaintiff produced no evidence to substantiate any of his claims; the court directed a verdict for the individual defendants on the § 1981 and § 1985 claims, and dismissed the Title VII action against them.

When no evidence is produced at trial to substantiate discrimination claims, the courts have frequently concluded that the claims were frivolous and have awarded attorneys' fees to the defendant. *See, e.g., Harris v. Plastics Manufacturing Co.,* 617 F.2d 438 (5th Cir.1980) (no evidence to support claim of race discrimination); *Kaimowitz v. Howard,* 547 F.Supp. 1345, 1351 (E.D.Mich.1982) ("no basis in fact" for claim of discrimination against ten individual defendants); *Hill v. BASF Wyandotte Corp.,* 547 F.Supp. 348, 354 (E.D.Mich.1982) (plaintiff produced no proof of race and sex discrimination claims); *Spence v. Eastern Airlines, Inc.,* 547 F.Supp. 204, 205 (S.D.N.Y. 1982) (plaintiff's discrimination claim was "devoid of any evidential support" at trial); *Hughes v. Defender Association of Philadelphia,* 509 F.Supp. 140, 141 (E.D.Pa.1981) ("virtually no evidence" to support race discrimination claim); *Dailey v. District 65, UAW,* 505 F.Supp. 1109, 1110 (S.D.N.Y. 1981) ("not a scintilla of evidence" to support discrimination claim); *Keown v. Storti,* 456 F.Supp. 232, 244 (E.D.Pa.1978), *aff'd,* 601 F.2d 575 (3d Cir.1979) (allegations of discrimination were conclusory; no substantial case against defendants). This case is not unlike *Kaimowitz, supra,* 547 F.Supp. 1345. Plaintiff there sued a school district, its Superintendent of Schools, its Director of Personnel, and the nine members of the School Board, alleging that they failed to hire her for a teaching position because of her association with black people, in viola-

tion of 42 U.S.C. §§ 1981, 1983, 1985, and 2000e–3. All defendants prevailed on all claims. On the application for attorneys' fees, the court concluded that the claims against the school district and the Director of Personnel were not frivolous, because those parties were directly involved in the decision not to hire the plaintiff. The claims against the Superintendent of Schools and the members of the School Board were frivolous, however, because "[p]laintiff had no basis to believe that these people had anything to do with the decision not to hire [her]." *Id.* at 1351. Similarly, in this case, plaintiff adduced no evidence to show that individual defendants Pollack, Conant, Von Essen, and Griffo had anything to do with the decision to discharge him. I believe that the *Kaimowitz* court put the matter well when it stated: "Plaintiffs in civil rights cases cannot with impunity make shotgun charges, naming every person connected with the defendant, unless there is some minimal basis for the claim." *Id.* That minimal basis is lacking here. I conclude that plaintiff's § 1981, § 1985, and Title VII claims against individual defendants Pollack, Conant, Von Essen, and Griffo were frivolous and that attorneys' fees should be awarded on those claims.

Since Dr. Herron was the only person responsible for plaintiff's discharge, and since the charges against the other individual defendants were frivolous, plaintiff's § 1985 claim against FDU was also frivolous. Section 1985(3) creates a cause of action for conspiracy to deprive a person of his civil rights. "[T]wo or more persons" must conspire, in order for either of them to be liable. 42 U.S.C. § 1985(3). FDU, as a corporation, is a legal "person;" however, a corporation, unlike a natural person, can act only through its agents. Dr. Herron was the only agent of FDU against whom plaintiff's discrimination claims were not frivolous. A natural person cannot conspire with himself or herself; so too, a corporation cannot conspire with just one of its agents.[5] There was no evidence that any

---

5. In *Novotny v. Great American Federal Savings & Loan Association,* 584 F.2d 1235, 1259

person except Herron participated in the decision to discharge plaintiff; thus, there was absolutely no evidence of conspiracy, and the § 1985 claim against FDU was groundless and frivolous.

This court's October 20, 1982, opinion did not discuss plaintiff's claims of defamation and violation of N.J.S.A. 10:5–1 *et seq.* Defendants argue that those claims were also frivolous. Plaintiff argues that he did not raise defamation claims against any of the defendants and that his claim under N.J. S.A. 10:5–1 *et seq.* was not frivolous.

▮▮▮ This court's order of March 10, 1982, dismissed plaintiff's "claims alleging defamation *and/or* violations of N.J.S.A. 10:5 et seq." (emphasis added). As we have noted, the complaint is hardly a model of clarity. On the one hand, it does not mention a defamation claim in the "Preliminary Statement," which characterizes the action as one "brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e–5(g) and pursuant to the Thirteenth Amendment to the United States Constitution, 42 U.S.C. 1981 and 1985(3)" and also mentions N.J. S.A. 10:5 *et seq.* Second Amended Complaint, ¶ 1. Nor does plaintiff mention defamation in his "Claim for Relief" or in his "Prayer." *Id.* at 28, 29. On the other hand, the words "libel," "slander," "libelous," and "slanderous" appear a number of times within the body of the complaint. *See id.,* ¶ 2(*o*), ¶ 2(q), ¶ 2(u), and ¶ 10 at 16. Given the use of these terms, it was reasonable for defendants to assume that the complaint contained a defamation claim. The plaintiff drafted the complaint; even if he did not intend to allege defamation, he should bear any extra expense caused by the complaint's ambiguity. I conclude that the

complaint did allege defamation, and that the claim was frivolous as to all defendants.

▮▮▮ Plaintiff's claim under the New Jersey Law Against Discrimination, N.J. S.A. 10:5–1 et seq., was based on the same allegations as his claims under 42 U.S.C. §§ 1981, 1985(3), and 2000e–5. This claim, too, was groundless and was dismissed before trial. The Law Against Discrimination provides, however, that attorneys' fees may not be awarded to a defendant "unless there is a determination that the charge was brought in bad faith." N.J.S.A. 10:5–27.1. Although I find that plaintiff's claim under N.J.S.A. 10:5–1 *et seq.* was frivolous, I do not find that it was brought in bad faith. Therefore, defendants may not recover attorneys' fees on this state law claim.

Finally, plaintiff makes two general arguments against the award of attorneys' fees in this case. He states, first, that attorneys' fees should not be awarded because he acted in good faith; and, second, that he should not be penalized for his lawyer's mistakes.

▮▮▮ Plaintiff argues that "[b]y determining that plaintiff's claims against F.D.U. were not frivolous, the court has essentially found that this suit was not instituted with the kind of intent necessary to prompt an award of attorneys' fees in a civil rights case." Plaintiff's Reply to Letter Opinion at 2. Plaintiff misreads the *Christiansburg* standard. The Court in *Christiansburg* clearly and unequivocally rejected a subjective, bad faith standard for awards of attorneys' fees. *See Christiansburg, supra,* 434 U.S. at 419, 98 S.Ct. at 699 ("It seems clear, in short, that in enacting

(3d Cir.1978) (en banc), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Third Circuit held that two agents of one corporation, acting within the scope of their employment, could be liable for conspiracy under § 1985(3). In so holding, it rejected the rule of some other circuits that the corporate form will immunize both the corporation and its agents from liability under § 1985(3), as long as the agents are acting within the scope of their authority. *See, e.g., Herrmann v. Moore,* 576 F.2d 453 (2d Cir.),

*cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *Baker v. Stuart Broadcasting Co.,* 505 F.2d 181 (8th Cir.1974); *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972). Although the Third Circuit did not address the issue directly in *Novotny,* it appears that two or more agents would still have to conspire before a corporation could be liable for conspiracy; one agent, acting alone, cannot be said to conspire with the corporation or with anyone else.

§ 706(k), Congress did not intend to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action"). Although the court may take subjective considerations into account, *id.* at 422, 98 S.Ct. at 700–01, the *Christiansburg* standard is basically an objective one. "[T]he inquiry is whether there were grounds for suit, not whether the plaintiff reasonably believed there to be grounds." *Nash v. Reedel,* 86 F.R.D. 16, 18 (E.D.Pa.1980). *See also Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 915 (11th Cir. 1982) (good or bad faith irrelevant where action was unreasonable and without foundation); *Hill v. BASF Wyandotte Corp., supra,* 547 F.Supp. at 354; *Fantroy v. Greater St. Louis Labor Council, AFL–CIO,* 511 F.Supp. 70, 72 (E.D.Mo.1980) (bad faith is merely one of several factors for consideration).[6]

 Plaintiff also protests that he is not responsible for the legal decisions of his counsel, such as the choice of defendants and the framing of claims. For purposes of 42 U.S.C. §§ 1988 and 2000e–5(k), however, a party is considered responsible for the conduct of counsel, and attorneys' fees, if awarded, are assessed against the plaintiff rather than against counsel. *See, e.g., Durrett v. Jenkins Brickyard, supra,* 678 F.2d at 915–16; *Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1383 (5th Cir.1979), *aff'd sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1978) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962)). As the court stated in *Prate, supra:*

> Whether or not [plaintiffs'] reliance on their attorneys' judgment was misplaced, they are legally responsible for the filing of these actions. The consequences of their attorneys' mistakes should not be visited on the appellants, whose participation in these suits helped to further the salutary purposes of Title VII.

583 F.2d at 48. If the attorney's actions were negligent, plaintiff may sue him for malpractice.[7] I conclude that attorneys' fees here should be assessed against the plaintiff.[8]

### C. Amount of the Fee Award

 The quantum of attorneys' fees in this circuit is to be determined in the light of *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 115 (3d Cir.1976) (*Lindy II* ), and *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166 (3d Cir. 1973) (*Lindy I* ). Those cases require the court to determine the number of hours the

---

**6.** A court may, in its discretion, deny attorneys' fees to a prevailing defendant in a frivolous action because of plaintiff's good faith. *See Hughes v. Repko,* 578 F.2d 483, 489 (3d Cir. 1978); *Herrera v. Farm Products, Inc.,* 540 F.Supp. 433, 435 (N.D.Iowa 1982); *Lane v. Jefferson Health Care, Inc.,* 455 F.Supp. 1168, 1174 (E.D.Pa.1978), *aff'd,* 612 F.2d 573 (3d Cir. 1979), *cert. denied,* 446 U.S. 968, 100 S.Ct. 2948, 64 L.Ed.2d 828 (1980). The plaintiff's good faith does not mandate denial of attorneys' fees, however. Moreover, given the totality of events here, including the jury's rejection of plaintiff's version of events, and this court's similar reaction to plaintiff's testimony, it would be a perversion of § 1988 under *Christiansburg* to exercise this court's discretion in favor of not awarding attorneys' fees against plaintiff.

**7.** The court may consider the extent of the lawyer's responsibility for bringing the frivolous claim, in deciding whether to exercise its discretion to award fees against a civil rights plaintiff. *Le Gare v. University of Pennsylvania Medical School,* 488 F.Supp. 1250, 1257 (E.D.Pa.1980); *Black Musicians of Pittsburgh v. Local 60–471, American Federation of Musicians, AFL–CIO,* 442 F.Supp. 855, 859 (W.D.Pa. 1977). Here plaintiff cannot escape responsibility. He took an active part in this case. He was even prepared to proceed *pro se.* He worked shoulder to shoulder with counsel in devising discovery. This court declines to remove plaintiff from direct responsibility for what has here occurred.

**8.** The court retains an inherent power to assess attorneys' fees against counsel who have filed an action in bad faith. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980). In this case, none of the parties has argued that plaintiff's counsel acted in bad faith.

attorney has spent on the matter and a reasonable hourly rate of compensation. Multiplying these factors, the court arrives at a "lodestar" amount. The "lodestar" may be increased or decreased, if the court deems it necessary, by consideration of two additional factors: the contingent nature of success and the quality of the attorney's work. *Lindy II, supra,* 540 F.2d at 108; *Lindy I, supra,* 487 F.2d at 167–69.

### 1. Number of hours

*Lindy I* and *Lindy II* state a "general principle that the prevailing [party's] compensation should be proportionate to the extent to which the [party] prevailed in the action." *Goldhaber v. Foley,* 698 F.2d 193 at 197 (3d Cir.1983). The application of this principle to civil rights cases is not entirely clear, however, the legislative history of 42 U.S.C. § 1988 seems to counsel against apportionment. The Senate Report which accompanied the bill ultimately enacted as § 1988 stated:

> In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter."

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913. A split has developed within the circuits; some courts have awarded attorneys' fees to a prevailing party for all time reasonably spent on a matter, *see, e.g., Jones v. Diamond,* 636 F.2d 1364, 1381–82 (5th Cir.), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Reproductive Health Services v. Freeman,* 614 F.2d 585, 600 (8th Cir.), *vacated on other grounds,* 449 U.S. 809, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980); *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir.1979) (prevailing defendant), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Bradford v. Blum,* 507 F.Supp. 526 (S.D.N.Y.1981); *Allen v. Terminal Transport Co., Inc.,* 486 F.Supp. 1195, 1201 (N.D. Ga.1980) (prevailing defendant), *aff'd,* 638 F.2d 1232, *modified* 653 F.2d 1016 (5th Cir.

1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982), while others have awarded fees only for time spent on claims on which the party prevailed. *See, e.g., Busche v. Burkee,* 649 F.2d 509, 521–22 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Muscare v. Quinn,* 614 F.2d 577, 578–79 (7th Cir.1980); *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978). The Supreme Court has recently granted certiorari to resolve the issue. *Eckerhart v. Hensley,* 664 F.2d 294 (8th Cir.1981), *cert. granted,* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

The Third Circuit, in *Hughes v. Repko,* 578 F.2d 483 (3d Cir.1978), ruled that a civil rights plaintiff seeking attorneys' fees must allocate time spent on successful and unsuccessful claims, and may be compensated only for time spent on successful claims. *Id.* at 487. The burden of persuasion rests on the fee applicant "to demonstrate to the court the number of hours attributable to the successful claim, and also to demonstrate that the number of hours so attributable was reasonably necessary to perform the work at issue." *Id.* To the extent that the hours spent on successful and unsuccessful claims overlap, however, the court may compensate the plaintiff:

> Implicit in our analysis is the recognition that legal services fairly devoted to successful claims are compensable even though those very same legal services also supported the prosecution of the unsuccessful claims.

*Id.*

The Third Circuit reached a similar result in *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir.1978), an antitrust case. There, the court instructed the district court to exclude from the lodestar those hours exclusively devoted to prosecution of unsuccessful claims; as in *Hughes,* services devoted to successful claims were compensable even though they also supported unsuccessful claims. 583 F.2d at 1215. The courts within this circuit have followed *Hughes* in calculating awards of attorneys' fees in civil rights cases. *See, e.g., Skomorucha v. Wilmington Housing*

*Authority,* 518 F.Supp. 657 (D.Del.1981); *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.Supp. 1360, 1381 (M.D. Pa.1981); *Keown v. Storti,* 456 F.Supp. 232 (E.D.Pa.1978), *aff'd,* 601 F.2d 575 (3d Cir. 1979).

Recently, however, the Third Circuit appears to have reinterpreted *Hughes.* In *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 689 F.2d .1161, 1171 (3d Cir.1982), the court reiterated the *Hughes* principle and then went on to say:

> The plaintiffs are entitled to recover fees "for all time reasonably spent on a matter." Senate Report [No. 94–1011, *supra*] at 6. . . .
>
> The district court must be mindful not to separate the issues in a complex piece of civil rights litigation and award fees for only those issues on which the plaintiffs prevailed.

*Id.* (citations omitted). Thus the Third Circuit seems to have moved toward the position of the Fifth, Sixth, and Eighth Circuits. *But see Goldhaber v. Foley, supra,* at 197–198 (applying *Hughes* and requiring apportionment on application for award of attorneys' fees under Equal Access to Justice Act).

This court must now apply *Hughes* and *Wilmington Medical Center,* which dealt with prevailing plaintiffs, in light of *Christiansburg, supra,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648. In this case, defendants prevailed on all claims, some of which were frivolous and some of which were not. Under *Christiansburg,* a defendant may recover attorneys' fees only for time spent defending against frivolous claims. It is clear that the court should include in the lodestar all hours spent *solely* in defense against frivolous claims and exclude those spent *solely* on nonfrivolous claims. The more difficult issue is whether hours spent in defense against both frivolous and nonfrivolous claims should be included in the lodestar. After the first hearing on this application, the court directed counsel to submit detailed affidavits apportioning time spent on frivolous and nonfrivolous claims; not surprisingly, the overlap is substantial.

Neither the court nor the parties has uncovered a case directly on point. Defendants argue that this court could simply follow *Hughes* and *Baughman* and award attorneys' fees for all services which supported the defense against frivolous claims, even if they also supported the defense against nonfrivolous claims. The court declines to accept this argument. *Christiansburg* and the policies behind the Civil Rights Act indicate that a plaintiff should not be required to compensate a prevailing defendant for any time spent defending against a non-frivolous civil rights claim. In *Christiansburg,* the Supreme Court identified two policies underlying 42 U.S.C. §§ 1988 and 2000e–5(k): encouraging private enforcement of the Civil Rights Act and protecting defendants from groundless suits. Mechanical application of *Hughes* to the present case would advance neither. Allowing defendants to recover attorneys' fees for time spent on nonfrivolous claims, even though the services rendered also supported the defense against frivolous claims, would have a chilling effect on prospective plaintiffs. It would discourage many meritorious suits, as well as some groundless ones. Plaintiff should have to shoulder only the extra burden which his frivolous claims placed on defendants. This result will still provide a disincentive for plaintiffs to bring frivolous suits, and will protect defendants from the extra expense involved when such claims are brought. Any other result would produce a windfall for defendants. Joinder of a frivolous with a nonfrivolous claim should not allow defendants to escape expenses which they would incur, in any event, in defending themselves against the latter.

We turn now to the affidavits submitted by counsel. They show the following breakdown of attorneys' and paraprofessionals' time:

Services performed solely on behalf of specific individual defendants . . . . . . . . . . . . . . . . 113.2 hours

This time breaks down as follows:

Defendants who went to trial:

Martin Conant............. 9.2 hours
James V. Griffo............. 5.0
Jerome M. Pollack........... 2.1
Ronald J. Von Essen........ 50.8
Subtotal................... 67.1

Defendants dismissed on October 27, 1981:

Milton H. Cooper........... 1.4 hours
Saul K. Fenster............. 0.5
Lowell Herron............. 17.7
Subtotal................... 19.6

Defendants dismissed by order filed July 7, 1982:

Fairleigh S. Dickinson, Jr. ....24.2 hours
J. Osborn Fuller ............ 1.7
William McGarry ........... 0.6
Subtotal.................. 26.5

| | |
|---|---|
| Services performed solely on behalf of individual defendants, but which cannot be allocated to specific individual defendants ................ | 169.8 |
| Services performed on behalf of individual defendants who are covered by the University's Director and Officer Liability Insurance policy ........... | 11.8 |
| Services performed on behalf of FDU and individual defendants | 170.7 |
| Services performed on behalf of all defendants in connection with insurance carriers' disclaimers of coverage ....... | 12.8 |
| Services performed on behalf of all defendants in connection with claim under N.J.S.A. 10:5–1 et seq................ | 15.0 |
| Services performed on behalf of all defendants in connection with claims under 42 U.S.C. §§ 1981 and 1985 ........... | 47.0 |

Section 1981 claim only ....... 8.3 hours
Section 1985 claim only ....... 11.3
Both claims ............... 27.4

| | |
|---|---|
| Services performed in connection with fee application | 135.5 |

Supplemental Affidavit of Dennis M. Cavanaugh, November 30, 1982 (Cav.Aff. V), ¶ 5–¶ 29. The affidavit does not include services rendered solely on behalf of FDU on the nonfrivolous (§ 1981 and Title VII) claims against it. Defendants assert that their attorneys' fees, on all claims, totaled

$180,821.50; they seek to recover $53,667 on this application. Supplemental Brief in Support of Defendants' Application for Attorneys' Fees at 6–8.[9]

▮ Following the principle set out above, the court will include in the lodestar 38.9 of the 67.1 hours which defendants' counsel states were spent solely on behalf of individual defendants Conant, Griffo, Pollack, and Von Essen. As all of the claims against these four defendants were frivolous, time spent solely on their behalf is compensable.[10] The court will deduct from the 67.1 hour figure the 28.2 hours claimed for "scheduling of, preparation for, and attendance at the deposition of Ronald Von Essen." Cav.Aff. V, ¶ 6(j). The court agrees with plaintiff that these services were necessary to defend nonfrivolous claims against FDU, as well as to defend frivolous claims against Von Essen.

The 26.5 hours spent on behalf of defendants Dickinson, McGarry, and Fuller will also be allowed. The action was frivolous as to them, for the same reasons that it was frivolous as to Pollack, Conant, Von Essen, and Griffo. The complaint against them was dismissed on the eve of trial, in May 1982, by order of the court. By that date, it should have been evident to plaintiff that he had no case against these three men. (Indeed, according to defendants' counsel, plaintiff had never served Dickinson, McGarry, or Fuller. Cav.Aff. III, ¶ 9.) Therefore, plaintiffs will be required to pay for time spent solely in defense of the frivolous claims against them.

▮ The court will not include in the lodestar the 19.6 hours spent on behalf of defendants Cooper, Fenster, and Herron. Plaintiff voluntarily dismissed the complaint as to these three men at an earlier stage, in October 1981. The court has already found that the § 1981 and Title VII claims against Dr. Herron were not frivo-

**9.** The court finds that the total number of hours is reasonable.

**10.** Services performed solely in connection with the N.J.S.A. 10:5–1 et seq. claim are not

included in the 67.1-hour figure. They are listed separately in the affidavit of counsel and will be discussed separately by the court.

lous, and thus no attorneys' fees may be awarded for services rendered in connection with them. The claims as to defendants Cooper and Fenster were frivolous but, in order to encourage early dismissals of meritless actions, the court in its discretion will not award attorneys' fees to these defendants.

■ Next, defendants claim 169.8 hours for services which were performed solely on behalf of individual defendants but which apparently cannot be allocated to specific individuals. Since some of the claims against Dr. Herron were not frivolous, and since the court has no way of distinguishing the time spent in defending the nonfrivolous claims against Dr. Herron from that spent on other claims and other individual defendants, the court will include in the lodestar only those services performed after the complaint against Dr. Herron was dismissed on October 27, 1981. The affidavit of defendants' counsel shows that 75.7 hours were spent on behalf of "various individual defendants" after that date. Cav. Aff. V, ¶ 12. Therefore, those 75.7 hours will also be included in the lodestar.

Similarly, only some of the 11.8 hours spent on behalf of the individual defendants who were covered by the University's Director and Officer Liability Insurance policy will be included in the lodestar. Dr. Herron was an officer (Vice-President) of the University; at least some of the services performed in connection with this insurance policy would have been related to the claims against him. Defendants have not separated (and the court doubts they could separate) the hours spent in connection with this policy on behalf of individual defendants. Therefore, the court will not include in the lodestar any hours spent in connection with the policy before Dr. Herron's dismissal on October 27, 1981. It will include the 6.4 hours which were spent after that date, *see id.*, ¶ 9, since those hours were spent solely on behalf of other individual defendants, against whom plaintiff's claims were frivolous.

■ Next, defendants seek to include in the lodestar 170.7 hours of services performed on behalf of FDU and individual defendants. They argue that the court could take one of two approaches to this unallocated time. First, defendants suggest that the court could exercise discretion and could apportion the time itself. They suggest taking the ratio between the amount of fees generated solely on behalf of the individual defendants and the total amount generated in the case (a ratio of $27,076.50 to $180,821.50, or 14.974%), and multiplying the amount of unallocated services by that number. The court declines to follow this suggestion. First, at this stage of the *Lindy* analysis we are concerned with hours spent, not with dollar figures. Second, and more important, the Third Circuit has clearly rejected mechanical approaches such as this. In *Hughes v. Repko, supra,* 578 F.2d 483, for example, the district court had determined that the plaintiffs had prevailed on one-third of their claims; it then awarded them attorneys' fees for one-third of the time spent on the case. The Third Circuit held that this was error:

> We think experience in litigation teaches that there is no necessary percentage relationship between the number of claims and contentions presented in a lawsuit and the lawyer time spent on each. Consequently, the approach adopted by the district court did not have a rational basis to commend it.

*Id.* at 486. Similarly, in *Baughman, supra,* 583 F.2d 1208, the Third Circuit found that where the plaintiff prevailed against one defendant but not others, it was error to allocate the hours among the various defendants simply in proportion to their number. *Id.* at 1215. And in *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir.1978) (*Prandini II*), the court found that the district court erred in reducing the number of compensable hours by ten percent "across the board" to account for the overlap between two cases. The Third Circuit found the district court's method of proration "inconsistent with the requirements of *Lindy I* and *Lindy II* that fee awards must be based upon record evidence." *Id.* at 51. Defend-

ants' suggestion is somewhat more sophisticated that the approaches rejected in *Hughes, Baughman,* and *Prandini II,* but the court believes that it still lacks the rational basis in the record which those cases require. The burden is on the fee applicant to allocate the hours attributable to frivolous claims, *see Hughes, supra,* 578 F.2d at 487; defendants have not carried their burden in this instance.

As an alternative, defendants suggest that the court could, by analogy to *Hughes,* include all of the unallocated hours in the lodestar amount. This would result in compensation of defendants for defense of non-frivolous claims. The court has already addressed and rejected this argument. Therefore, none of the 170.7 unallocated hours will be included in the lodestar.

Next, defendants seek to include 12.8 hours of service performed on behalf of all defendants in connection with various insurance carriers' disclaimers of coverage. Again, these hours are not allocated by defendant or by claim. The court has no way of knowing which services would have been necessary, in any event, to defend FDU against nonfrivolous claims. Therefore, none of these hours will be included in the lodestar.

Defendants next state that their attorneys performed 15 hours of services on behalf of all defendants in connection with the claim under N.J.S.A. 10:5–1 *et seq.* This claim was frivolous as to all defendants; however, the court will not include these hours in the lodestar because it has made no finding of bad faith, and N.J.S.A. 10:5–27.1 forbids the award of attorneys' fees in the absence of such a finding.

Defendants also seek to include in the lodestar 47 hours of services performed on behalf of all defendants in connection with the § 1981 and § 1985 claims. Since the § 1985 claims against all defendants were frivolous, the court will allow the 11.3 hours which were spent solely on those claims. The remaining hours were spent either on the § 1981 claims or on both claims; because they cannot be allocated, the court will exclude them from the lodestar.

■ Finally, defendants seek compensation for time spent by their attorneys in preparing the fee application. Expenses connected with the fee application should not be included in the lodestar amount, *Baughman, supra,* 583 F.2d at 1219; *Keown v. Storti, supra,* 456 F.Supp. at 239–40, and thus will be considered later.

In summary, the court will include in the lodestar 147.5 hours for services rendered in defense against plaintiff's frivolous claims. This figure includes:

| | |
|---|---|
| Services performed solely on behalf of individual defendants Conant, Pollack, Von Essen, Griffo, Dickinson, McGarry, and Fuller . . . . . . . . . . . . . . . . . . . . | 65.4 hours |
| Services performed solely on behalf of individual defendants after October 27, 1981, which cannot be allocated to specific individuals . . . . . . . . . . . . . . . . | 75.7 |
| Services performed after October 27, 1981, on behalf of individual defendants covered by University's Director and Officer Liability Insurance policy . . . . . . . . . . . . . . . . . . . . | 6.4 |
| TOTAL . . . . . . . . . . . . . . . . . . | 147.5 hours |

The court finds this number of hours reasonable, given the multiple defendants, multiple claims, and the diffuse nature of the complaint.

### 2. Reasonable hourly rate

The court arrives at the lodestar amount by multiplying the number of hours by the reasonable value of counsel's time. Counsel's normal hourly billing rate is usually regarded as a reasonable rate, *Pitchford v. PEPI, Inc.,* 531 F.2d 92, 110 (3d Cir.1975), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979), since it reflects the attorney's experience, demonstrated ability, expertise, and reputation.

Defendants' counsel has complied with the requirements of *Baughman, supra,* 583 F.2d at 1217; *Lindy II, supra,* 540 F.2d at 117; and *Lindy I, supra,* 487 F.2d at 167, by stating which attorney performed each of the services listed in the fee petition. Defendants have also set out the qualifications of each attorney and his or her customary

hourly rate. See Affidavit of Dennis M. Cavanaugh, July 16, 1982 (Cav.Aff. IV), ¶ 5, ¶ 7. Plaintiff does not object to these rates. The court finds that the hourly rates are fair and reasonable, in light of the status and experience of the attorneys, their achievements and accomplishments in this litigation, and their normal billing practices.

According to the affidavit of counsel, the following charges were incurred for services which the court has determined are compensable:

| | | |
|---|---|---|
| Services performed solely on behalf of individual defendants Conant, Pollack, Von Essen, Griffo, Dickinson, McGarry, and Fuller .................... | | $ 6,346.50 |

*Attorneys*

| | | |
|---|---|---|
| Martin Clinton Conant 17.5 hours × $150 | = | $ 2,625.00 |
| Dennis M. Cavanaugh 23.3 hours × $100 | = | 2,330.00 |
| Wayne J. Positan 0.3 hours × $90 | = | 27.00 |
| Robert J. Kelly 0.5 hours × $80 | = | 40.00 |
| Maria L. Vecchioti 17.2 hours × $60 | = | 1,032.00 |
| Steven Backfisch 6.3 hours × $45 | = | 283.50 |

*Para-Professionals*

| | | |
|---|---|---|
| Michele V. Quarles 0.3 hours × $30 | = | 9.00 |
| Subtotal: | | $ 6,346.50 |

| | | |
|---|---|---|
| Services performed after October 27, 1981, solely on behalf of individual defendants, which cannot be allocated to specific defendants ......... | | $5,781.00 |

*Attorneys*

| | | |
|---|---|---|
| Martin Clinton Conant 0.3 hours × $150 | = | $ 45.00 |
| Dennis M. Cavanaugh 30.3 hours × $100 | = | 3,030.00 |
| Maria L. Vecchiotti 25.8 hours × $60 | = | 1,548.00 |
| Deborah J. Bowers 19.3 hours × $60 | = | 1,158.00 |
| Subtotal | | $ 5,781.00 |

| | | |
|---|---|---|
| Services performed after October 27, 1981, on behalf of individual defendants covered by University's Director and Officer Liability Insurance Policy .................... | | $ 628.00 |

*Attorneys*

| | | |
|---|---|---|
| Dennis M. Cavanaugh 6.1 hours × $100 | = | $ 610.00 |
| Maria L. Vecchiotti 0.3 hours × $60 | = | 18.00 |
| Subtotal | | $ 628.00 |

| | |
|---|---|
| TOTAL ................... | $12,755.50 |

Thus the basic lodestar amount is $12,-755.50.

### 3. Additional Lindy factors

In addition to the lodestar, the court's computation of a fee award "should reflect two other factors—the contingent nature of success and the quality of the attorney's work." *Lindy II, supra,* 540 F.2d at 112 (citing *Lindy I, supra,* 487 F.2d at 168). Defendants do not seek a contingency increase, and the court agrees that none is warranted. Defendants do seek an increase of 10%, based on the quality of counsel's work.

An adjustment based on the quality of the attorneys' work is "designed to take account of an unusual degree of skill, be it unusually poor or unusually good." *Lindy I, supra,* 487 F.2d at 168. An increase or decrease for quality reflects "exceptional services only." *Lindy II, supra,* 540 F.2d at 118. In this case, defendants' counsel argue that they are entitled to a quality increase because "[a]t all times during the course of this proceeding, [they] have discharged their duties in a professional, courteous, and expeditious manner," Brief in Support of Defendants' Application for Attorneys' Fees at 36, even when faced with dilatory tactics; because they have filed all their papers within the time allotted by the Federal Rules of Civil Procedure and by the court; because they performed their work efficiently, delegating responsibilities whenever possible; and because of the quality of the exhibit books which they prepared for trial. The court has considered these factors, but believes that a quality increase is not warranted. Defendants' counsel did indeed discharge their duties professionally, courteously, and promptly; this is no more than they are expected to do, however, as attorneys and members of the bar. Defendants' exhibit

books were indeed of high quality, but were not so exceptional as to justify a 10% increase in the lodestar. Finally, we note that the issues of law in this case were not exceptionally difficult or novel, and the quality of counsel's work is amply reflected in their hourly rates. *Cf. Baughman, supra,* 583 F.2d at 1218; *Nash v. Reedel,* 86 F.R.D. 16, 19 (E.D.Pa.1980).

### 4. Post-Lindy discretionary adjustment

Following the lodestar calculation and the consideration of the additional *Lindy* factors, the court should consider whether the resulting amount should be adjusted "so as to further the 'important substantive purposes' of the Civil Rights Act ... and to assure that the final fee award is reasonable." *Hughes v. Repko, supra,* 578 F.2d at 492 (Garth, J., concurring). *See also id.* at 488; *id.* at 490 (Rosenn, J., concurring); *Bagby v. Beal,* 606 F.2d 411, 416 (3d Cir. 1979). Defendants argue that the court should increase the lodestar amount by 10% in order to further the policy of deterring frivolous and vexatious suits and to ensure that the final award is reasonable. Plaintiff opposes such an increase but has not sought a decrease in the lodestar amount.

■ The court finds that a discretionary adjustment is not required. No increase is necessary; the lodestar amount itself is sufficient to serve the deterrent purposes of 42 U.S.C. §§ 1988 and 2000e–5(k). Nor is a decrease required. In some civil rights cases, the courts have decreased the amount of the fee award to a prevailing defendant after considering the plaintiff's limited ability to pay. *See, e.g., Spence v. Eastern Airlines,* 547 F.Supp. 204, 205–06 (S.D.N.Y. 1982); *Kaimowitz v. Howard,* 547 F.Supp. 1345, 1353–55 (E.D.Mich.1982); *Hill v. BASF Wyandotte Corp.,* 547 F.Supp. 348, 355–56 (E.D.Mich.1982); *Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013 (S.D.N.Y.1982).[11] In this case, however, evidence produced at trial showed that plaintiff is a man of means, who appears to be

under no compulsion to work. *See* Findings of Fact, ¶ 151. He and his wife have extensive real estate holdings in New Jersey. He breeds and raises horses as an avocation (indeed, one day he appeared in court attired in a riding outfit). He has not requested any decrease in the lodestar based on his ability to pay, and the court finds that no decrease is necessary in order to effectuate the purposes of the Act.

### 5. Fee application

Defendants seek $7,759 for time spent in preparing the initial brief and affidavit in support of their fee application. They do not seek expenses incurred in preparing their supplemental brief and affidavit or any other expenses incurred in connection with the fee application after July 15, 1982.

■ When an award of attorneys' fees is statutorily authorized, as here, the reasonable expenses of preparing the fee application should be included in the award. *David v. City of Scranton,* 633 F.2d 676 (3d Cir.1980); *Bagby v. Beal, supra,* 606 F.2d at 416; *Prandini II, supra,* 585 F.2d at 53; *Nash v. Reedel, supra,* 86 F.R.D. at 19 (prevailing defendant). Defendants' counsel states that services performed in connection with the fee application consumed 110.6 hours of attorneys' time and 21.3 hours of a clerk's time. Cav.Aff. V, ¶ 27–¶ 28. These figures break down as follows:

*Attorneys*

| | | |
|---|---|---|
| Dennis M. Cavanaugh | | |
| 6.7 hours × $100 | = | $ 670.00 |
| Maria L. Vecchiotti | | |
| 107.5 hours × $60 | = | 6,450.00 |

*Clerks*

| | | |
|---|---|---|
| Eric D. Olick | | |
| 21.3 hours × $30 | = | 639.00 |
| TOTAL | | $7,759.00 |

*Id.,* ¶ 29. Most of this time was spent in "extensive research regarding 42 U.S.C. § 1988," preparation of the brief and affidavit, and review of timesheets. *Id.,* ¶ 27. Plaintiff has not opposed the award of fees for time spent on the fee application. Nor

---

11. The Third Circuit has expressly refrained from deciding whether a court may take ability to pay into account when awarding fees under § 1988. *Hughes v. Repko, supra,* 578 F.2d at 488.

does he object to the number of hours claimed by defendants.

 The court finds that it was reasonably necessary to spend 131.4 hours on the fee application and believes that $7,759 represents a reasonable fee for services in connection with this application. Accordingly, plaintiff will be ordered to pay $7,759 for services performed in connection with the fee application, in addition to the lodestar amount of $12,755.50.

## III. DEFENDANTS' APPLICATION FOR COSTS

Defendants seek $4,361.02 to cover their costs in this matter. This figure includes:

| | |
|---|---|
| Witness fees ............... | $1,392.06 |
| Court reporter's fees—transcripts ........... | 176.00 |
| Photostating of exhibit books, index to exhibit books, pleadings (supplied to court), defendants' exhibits (supplied to plaintiff), and defendants' critique of plaintiff's findings of fact and conclusions of law (supplied to plaintiff) ........ | 2,507.60 |
| Exhibit markers ........... | 21.00 |
| Binding exhibit books ........ | 2.50 |
| Deposition transcript from deposition of John DiGioia, used at trial pursuant to Fed.R.Civ.P. 32(a)(3) ........ | 120.86 |
| Deposition transcript—deposition of Fairleigh S. Dickinson, Jr. .... | 141.00 |
| TOTAL .................. | $4,361.02 |

Plaintiff does not oppose the award of costs, or question any of the items.

 It is well established, within this circuit, that the district court may not deny costs to the prevailing party unless it supports that determination with an explanation. *Samuels v. University of Pittsburgh,* 538 F.2d 991, 999 (3d Cir.1976) (citing *ADM Corp. v. Speedmaster Packaging Corp.,* 525 F.2d 662, 664–65 (3d Cir.1975)). This rule applies to civil rights cases, even when the prevailing party is the defendant. *P. Mastrippolito & Sons, Inc. v. Joseph, supra,* 692 F.2d at 1388 (3d Cir.1982); *Croker v. Boeing Co.,* 662 F.2d 975, 988 (3d Cir.1981) (en banc). A finding that the plaintiff's action was not frivolous cannot support a determination not to award costs in a civil rights case. *Mastrippolito, supra,* 692 F.2d at 1388. The court finds no reason not to award costs to defendants. Plaintiff will be ordered to pay $4,361.02 in costs.

## IV. CONCLUSION

Plaintiff's § 1981 and Title VII claims against all of the individual defendants except Lowell W. Herron were frivolous. Plaintiff's § 1985, defamation, and New Jersey Law Against Discrimination claims against FDU and all individual defendants were frivolous. Plaintiff is ordered to pay defendants $12,755.50 for services rendered in connection with the merits of the case; $7,759 for services rendered in connection with the fee application; and $4,361.02 in costs, for a total of $24,875.52.

## ORDER

Application having been made to this court by various defendants for attorneys' fees and costs, and the court having considered the arguments and submissions of counsel; and

The court having determined that plaintiff's § 1981 and Title VII claims against all of the individual defendants except Lowell W. Herron were frivolous; and the court having also determined that plaintiff's § 1985, defamation, and New Jersey Law Against Discrimination claims against FDU and all individual defendants were frivolous;

IT IS this 14th day of March, 1983, ORDERED that plaintiff pay defendants $12,755.50 for services rendered in connection with the merits of the case; $7,759 for services rendered in connection with the fee application; and $4,361.02 in costs, for a total of $24,875.52, all in accordance with an opinion filed this date with the clerk of the court.